**UNITED STATES of America, Plaintiff,**

v.

**Arthur Austin EVES, Defendant.**

**No. 89–10092–01.**

United States District Court,
D. Kansas.

June 11, 1990.

Robin Fowler, Asst. U.S. Atty., Wichita, Kan., for plaintiff.

Steve Gradert, Asst. Federal Public Defender, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

Defendant was charged in a one-count indictment with possessing with intent to distribute approximately 3 pounds of processed marijuana and over 1,000 marijuana plants, in violation of 21 U.S.C. § 841(a)(1). The defendant entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2). The defendant's conditional plea did not encompass pleading guilty to the specific number of marijuana plants.

The number of marijuana plants the defendant is found to have possessed with the intent to distribute determines the mandatory minimum sentence of imprisonment. If the defendant is found to have possessed with the intent to distribute 1,000 or more marijuana plants regardless of weight, then the mandatory minimum term of imprisonment is 10 years. 21 U.S.C. § 841(b)(1)(A)(vii). If the defendant is found to have possessed with the intent to distribute 100 or more (but less than 1,000) marijuana plants regardless of weight, then the mandatory minimum term of imprisonment is 5 years. 21 U.S.C. § 841(b)(1)(B)(vii). Defendant contends

that he possessed less than 1,000 marijuana plants. The court heard evidence on this issue during a sentencing hearing.

*Facts*

The defendant grew marijuana in the basement of his house. In one small room of the basement there were eight mother plants. The defendant took cuttings from the mother plants and these cuttings were placed in rockwall cubes for propagation. Along with the mother plants, there were three tables in the small room which held marijuana. The tables were given numerical designations. Table # 10 held 167 marijuana cuttings which were taken from the mother plants 10 days prior to the day of the search. Table # 11 held 29 cuttings which were also taken 10 days prior to the day of the search. There were 156 marijuana cuttings on table # 12 which were taken from the mother plants 4 days prior to the search. In the large main room of the basement there were eight tables. Table # 1 was empty. Table # 2 held 150 marijuana cuttings which were approximately 17–18 days old from the time of the cutting from the mother plant. Tables # 3, # 4, and # 5 each held 150 plants. Table # 6 held 48 plants. Table # 7 held 145 plants, and tables # 8 and # 9 each held 132 plants respectively. Defendant asserts that there were 915 marijuana plants in his basement on the day of the search. He arrives at this figure by counting the plants on tables # 3 through # 9 plus the eight mother plants. Defendant argues that the remaining 502 cuttings on tables # 2, 10, 11, and 12 were not plants and should not be counted toward the total number of plants.

The defendant testified that he would take cuttings from the mother plants and stick the cuttings in rockwall cubes that were saturated with water as a means of propagation. In order for the cuttings to remain viable, the defendant had to consistently spray mist the cuttings and cover them with a plastic dome in order to keep the humidity high. This type of care and maintenance was not required on tables # 3 through # 9. Instead, the defendant only had to keep the 12 gallon reservoir underneath the tables filled with water and nutrients. Water would be pumped automatically to the table surface and water the plants on those tables.

The defendant testified that he did not consider cuttings to be plants until approximately 30 days after being taken from the mother plants. It was normally at that point in time when he noticed "that if I didn't spray mist them frequently or put a tent on them, they would no longer wilt." Trans., p. 23. If the defendant saw new growth on the cuttings by new leaves beginning to form on the tops and a lack of wilting, he then considered the cuttings to be plants which would survive by themselves. The earliest point in time where the defendant saw this occur was 21 days from the time the cutting was severed from the mother plant, but in general it took 30 days. The cuttings on tables # 2, 10, 11, and 12 still had to be spray misted or have a plastic dome put over them, so the defendant did not consider these cuttings to be plants.

Dr. Arthur Youngman testified as an expert witness on behalf of the defendant. Dr. Youngman holds a bachelor and master's degree in biology and a Ph.D. in botany. He has been an assistant professor of biology at Wichita State University for 25 years. He teaches courses at all levels from introductory to graduate courses, primarily in botany. He maintains the greenhouse at Wichita State, and conducts research on the growth and propagation of plants. He has grown marijuana from seed experimentally at Wichita State.

Dr. Youngman testified that a "plant" is a living organism belonging to the kingdom of Plantae which is composed of a shoot system and a root system. Since the plant is a living organism, one of its most important characteristics is the fact that it has a way of obtaining energy. In the case of a plant, obtaining energy involves gas exchange, since one of the gases it uses is carbon dioxide to carry on photosynthesis. Dr. Youngman further testified that a cutting is not a plant. A cutting becomes a plant when it develops a root system sufficient to allow the cutting to maintain open

stomas so that it can exchange gas and provide for energy requirements. It is Dr. Youngman's opinion that a person cannot tell by looking at a cutting whether it is a cutting or a plant. The fact that some roots might appear on a cutting does not necessarily mean that the cutting has become a plant in Dr. Youngman's opinion. The only way to tell whether a cutting has become a plant is to test whether its root system has developed well enough to allow the stoma to remain open so that gas exchange and energy nourishment occur. Instrumentation is available to monitor a cutting or plant to see whether gas exchange is occurring. There is an infrared gas analyzer which measures minute concentrations of carbon dioxide in the atmosphere. If the level of carbon dioxide is reduced, that is a good indication that the cutting or plant was in fact conducting energy. Dr. Youngman testified that the other possibility of determining whether growth was occurring is to observe the cutting or plant over a period of time to see whether increments of tissue were apparent. Dr. Youngman did not physically observe the cuttings or plants in question. He did watch the videotape the police made of the search of defendant's house and did examine photographs of table # 2. It was his opinion after viewing the videotape and listening to defendant's testimony that the marijuana on table # 2 were cuttings and were not plants, since it seemed to him that the cuttings had not reached the stage of growth where the cuttings could nourish themselves.

Agent Robert Benton of the DEA Task Force videotaped the search of defendant's home. He testified that the cuttings or plants on tables # 10 and # 11 were larger than those on table # 12 and the cuttings or plants on table # 2 were nearly twice the size as the ones on tables # 10 and # 11. The average plant on table # 2 was seven to eight inches tall and Agent Benton believed there were three tiers of leaves on each plant, although he admitted on cross-examination that he did not know how the defendant cared for or maintained the plants or what conditions existed on the plants to make them three tiered. Agent

Benton further testified that when the marijuana was pulled out of the cubes on tables # 11 and # 12, the marijuana "just popped right out." The marijuana cuttings on table # 2 "didn't just pull right out. You had to actually tug them out." Trans., p. 83. The DEA took 1414 plants from the rockwall cubes. The defendant's investigator counted the marijuana. Only those plants with root balls on them were counted as plants. If there was a stem with roots it was counted as one plant. Defendant's investigator counted between 1100 and 1200 plants with a root ball at the base of the plant.

*Discussion*

To this court's knowledge, the issue of what is to be considered a marijuana "plant" for purposes of applying the appropriate penalty provision of 21 U.S.C. § 841(b) has only been addressed by one other court. In *United States v. Fitol*, 733 F.Supp. 1312 (D.Minn.1990), Judge Devitt examined the legislative history of § 841(b). He noted that the statute was amended in 1986 and again in 1988 to provide for mandatory minimum sentences of 5 and 10 years respectively for violations of § 841(a) which involved "100 or more" or "1,000 or more marijuana plants regardless of weight." 733 F.Supp. at 1315. Prior to the amendments, § 841(b) punished the manufacture of marijuana solely by weight. *Id.* It was clear to Judge Devitt that:

> by changing the determining factor from weight to number of 'plants *regardless of weight,*' Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marihuana plants to be as culpable as one who has successfully grown 100 kilograms of marihuana.

733 F.Supp. at 1315 (Emphasis in original). Judge Devitt found nothing in the legislative history of the 1986 or 1988 amendments as to what Congress meant by "plants." *Id.* The court did find however, that there was no indication Congress in-

tended the word "plants" to have any other meaning than its ordinary meaning. 733 F.Supp. at 1316. Judge Devitt noted:

> The common, everyday meaning of 'plant' is a living organism which belongs to the vegetable kingdom in the broad sense. *Cf. Webster's New International Dictionary*, 1881, def. no. 3 (2d ed. unabridged 1961). Often plants have leaves and roots and grow in soil or other matter. To distinguish two plants from one plant cut into two pieces, there must be some evidence of individual growth after the severance, such as the growing of roots from a cutting. According to Webster's, 'plant' means '[a] young tree, shrub, or herb, planted or ready to plant; a slip, *cutting*, or sapling ...' *Id.*, def. no. 1 (emphasis added).

733 F.Supp. at 1315. The defendant in *Fitol*, like the defendant in the case presently before the court, argued that a certain number of plants found during the search were cuttings rather than plants. The Minnesota district court disagreed, finding that "it is undisputed that defendant's 'cuttings' are marihuana. It is also clear that these individual cuttings, planted with the intent of growing full size plants, and which had grown roots, are 'plants' both within common parlance and within Section 841(b)." 733 F.Supp. at 1316.

The defendant argues that the government has failed to show by a preponderance of the evidence that there were 1,000 or more marijuana "plants" involved. While it is true that the testimony of the defendant and of Dr. Youngman weighs heavily in favor of a finding that the cuttings were not plants in the strict botanical sense, it is not the strict botanical definition which the court must apply in trying to determine what Congress intended the word "plants" to mean as that word is used in the penalty provisions of § 841(b). The court agrees with the finding in the *Fitol* case that Congress intended "plants" to have its ordinary, everyday meaning, which includes cuttings with roots.

As noted previously, Agent Benton testified that 1414 plants were taken from defendant's home on the day of the search.

The agent was present when the defendant's investigator counted the number of plants. A plant was counted as a plant if it had a stem with roots at the base. Defendant's investigator counted between 1100 and 1200 plants using this criteria. Dr. Youngman never physically examined the plants. The defendant testified that to his knowledge the cuttings on table # 2 did not have roots, although he was not present when the cuttings on that table were pulled out of the rockwall cubes. The court finds that the government has shown by a preponderance of the evidence that defendant's violation of § 841(a)(1) involved 1,000 or more marijuana plants and therefore defendant is subject to the mandatory 10 year minimum sentence of § 841(b)(1)(A)(vii).

IT IS THEREFORE ORDERED that the defendant shall be sentenced under the penalty provisions of 21 U.S.C. § 841(b)(1)(A)(vii). Notice of a new sentencing date will be sent to counsel.