**UNITED STATES of America, Plaintiff,**

v.

**Rudolph C. FITOL, Defendant.**

**No. Cr. 3–89–118(01).**

United States District Court,
D. Minnesota,
Third Division.

April 6, 1990.

Jeffrey S. Paulsen, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

Charles Hawkins, Minneapolis, Minn., for defendant.

## AMENDED ORDER

DEVITT, District Judge.

A sentencing hearing was held in this matter on March 5, 1990 to determine whether defendant was growing "100 or more marihuana plants" within the meaning of 21 U.S.C. § 841(b)(1)(B)(vii). That section provides for a mandatory five year minimum sentence for violations of Section 841(a) involving "100 or more marihuana plants regardless of weight." Defendant contends that the marihuana "cuttings" he was cultivating in his basement do not constitute "marihuana plants" within the meaning of Section 841(b).

## FACTS

Minneapolis Narcotics Officer Richard Fischer testified that he seized a total of 190 marihuana plants during the execution of a search warrant at the defendant's residence. All 190 plants eventually were removed from their containers and found to have root systems. It is undisputed that all the plant material was marihuana.

According to Officer Fischer, one room of the basement of defendant's residence, which can be referred to as the growing room, contained 88 marihuana plants. These plants were arranged in four long watering troughs, each trough containing 22 plants. Three of the troughs contained plants that were approximately three to four feet high. The remaining trough contained plants that were approximately one to two feet high. Government exhibits 1 through 4 (copies attached) are photographs depicting these plants. Officer Fischer testified that he counted each of these plants carefully and found there to be 88 in the growing room.

The defendant disputes that there were 88 plants in the growing room. He claims that the three troughs containing the larger marihuana plants each contained only 18 plants rather than 22, for a total of 54 large plants. Because these 12 disputed plants will not affect this court's sentencing analysis, the court will assume there were only 54 large plants in the three troughs.

Officer Fischer also testified that a separate room in the basement, which can be referred to as the starter room, contained a total of 102 marihuana plants. Seventy-two of these plants were found in three separate aquariums, 24 in each aquarium. The remaining 30 were found in pots set out on the floor. Four of the 30 were very large "mother plants," two were medium-sized plants, and the remaining 24 were of the same size and age as the 22 smaller plants in the growing room.

The defendant concedes that all of the larger plants in the growing room (54 plants) and the four large and two medium-sized plants in the starter room are indeed marihuana plants. With respect to the remaining 118 plants, the defendant maintains that they are "cuttings" rather than plants.

The defendant testified that he has been growing marihuana in his house since the summer of 1986. Initially he attempted to grow marihuana from seeds, but was unsuccessful. Beginning in 1987, he began reproducing marihuana plants by taking cuttings from the large mother plants. All of the marihuana found in the defendant's basement began as cuttings from the mother plants.

According to the defendant, after some initial preparation, cuttings are placed in containers in the aquariums for a period of approximately four weeks. (He testified

that the "cuttings" found in the aquariums at the time of the search had only been there for approximately seven days.) They are then transferred to the floor of the starter room or to the growing room as space allows. After further development, they are moved to the growing room where they are watered by an automatic process. The primary difference in care is that the plants in the starter room are watered by hand while the plants in the growing room are watered automatically. The starter room plants also are given less light initially, and the plants in the aquariums are protected by plastic placed over the top of each aquarium.

Defendant called Robert Kelly to testify as an expert witness. Mr. Kelly holds no degrees in botany or horticulture and has never testified as an expert on those subjects. However, he has taken several courses and lectured in those subjects. He has also been an officer of several horticultural associations and gardens as a hobby. He conceded he has no training or experience whatsoever with marihuana plants. It should be noted that Mr. Kelly is an acquaintance of the defendant who was asked to testify by a mutual friend of his and the defendant.

Mr. Kelly testified that a cutting does not become a plant until it (1) can survive on its own, (2) develops secondary leaves, and (3) develops secondary roots, which rooting takes approximately two to three weeks. In the context of the type of indoor, hydroponic growing involved in this case, however, it appears that criteria (1) and (3) are not determinative. A plant grown hydroponically will not develop a strong root system because of the nature of the medium in which it is placed. Further, indoor plants, whether large or small, mature or immature, cannot be said to survive on their own as they all require constant human intervention to provide nourishment and light.

Mr. Kelly never examined the actual marihuana seized in this case. From viewing the photographs, he testified that the 72 plants in the aquariums, the 24 plants in the starter room, and the 22 smaller plants in the growing room all were cuttings rather than plants. He based this conclusion on his observation that at least some of these plants did not have three separate sets of leaves on their stems. He testified that, in his judgment, three sets of leaves are necessary before a cutting can be considered a plant. He was unable to cite any authoritative reference work to support this opinion.

## DISCUSSION

The question before the court is what constitutes a "marihuana plant" within the meaning of 21 U.S.C. § 841(b)? That section provides a defendant is subject to a five year mandatory minimum sentence for growing "100 or more marihuana plants regardless of weight." 21 U.S.C. § 841(b)(1)(B)(vii). However the statute does not define the term "plant."[1] This question appears to be one of first impression.

The parties argue that a definition of "plant" can be borrowed from other contexts. The government cites to several other statutes and several regulations. *See* 16 U.S.C. § 3371(f) (regulating import and export of fish and wildlife); 39 U.S.C. § 3014 (concerning plants which may not be mailed); 50 C.F.R. § 10.12 (regulating import and export of plants); 7 C.F.R. § 355.2 (endangered plant species). Defendant cites to *United States v. American Express Co.*, 158 F. 808 (2d Cir.1908) which dealt with custom duties due on rose "plants" as opposed to rose "cuttings" within the meaning of a tariff act.

The court is not persuaded that the meaning given to "plants" in these other contexts sheds any light on its intended

---

1. *See also* United States Sentencing Commission Guidelines § 201.1(a)(3) and the accompanying Drug Quantity Table which provides that in cases involving "(A) 50 or more marihuana plants, treat each plant as equivalent to 1 kg of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 g of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana." The Guidelines do not define "marihuana plant."

meaning within the drug laws. In these other contexts, the definition is used to determine whether the object in question is covered by regulation. In Section 841(b) it is clear that the possession or manufacture of marihuana is prohibited. The meaning of "plant" in section 841(b) would establish the *quantity* of marihuana involved, which in turn would establish the length of punishment to be imposed for its manufacture.

The common, everyday meaning of "plant" is a living organism which belongs to the vegetable kingdom in the broad sense. *Cf. Webster's New International Dictionary*, 1881, def. no. 3 (2d ed. unabridged 1961). Often plants have leaves and roots and grow in soil or other matter. To distinguish two plants from one plant cut into two pieces, there must be some evidence of individual growth after the severance, such as the growing of roots from a cutting. According to Webster's, "plant" means "[a] young tree, shrub, or herb, planted or ready to plant; a slip, *cutting, or sapling ...*" *Id.*, def. no. 1 (emphasis added).

As is discussed below, it appears that in Section 841(b) Congress intended "plant" to have its ordinary, everyday meaning which includes "cuttings" and young plants. Because defendant's interpretation would conflict with the implied intent of Congress, the rule of lenity does not apply. *Liparota v. United States*, 471 U.S. 419, 428, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985).

Originally Section 841(b) punished the manufacture of marihuana solely by weight. In 1986, however, Congress amended the statute to enhance punishment for the growing of "100 or more marihuana plants regardless of weight." *See* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, § 1003(a)(1)(C), 1986 U.S.Code Cong. & Admin. News (100 Stat.) 3207, 3207–5 (codified as amended at 21 U.S.C. § 841(b)(1)(D) (1982 & Supp. IV 1986)). In 1988, Congress again amended the statute to provide for mandatory 5 and 10 year sentences for the growing of "100 or more" or "1,000 or more marihuana plants regardless of weight," respectively. *See* Anti–Drug Abuse Act of 1988, Pub.L. No.

100–690, § 6470(g)(2) & (h)(2) and § 6479, 1988 U.S.Code Cong. & Admin. News (102 Stat.) 4181, 4378, 4381–82 (codified as amended at 21 U.S.C. § 841(b)(1)(A)(vii) and (b)(1)(B)(vii) (1988)).

It appears that the 1988 legislation was intended, at least in part, to curtail a debate about whether seeds and stems of marihuana were includable in determining the drug's weight under Section 841(b). *See Section Analysis of Judiciary Committee Issues in H.R. 5210*, 134 Cong.Rec. S17360, S17368, § 6479 (daily ed. Nov. 10, 1988) (submitted by Mr. Biden). At least one court had held that stalks of marihuana plants seized at a stage before the marihuana had been turned into a marketable product were not to be counted toward the 1,000 kilogram requirement which triggered the 10 year mandatory minimum sentence. *United States v. Miller*, 680 F.Supp. 1189 (E.D.Tenn.1988). Congress was apparently unhappy with this result and chose to remedy it by providing that the number of "plants regardless of weight" could also trigger the mandatory minimum sentences.

The court has found no indication in the legislative history of the 1988 amendment, however, as to why this method was used instead of simply stating that stalks were to be included in determining weight. Nor has the court found any legislative material that sheds any light on what motivated the 1986 change to employing the number of plants involved in determining sentences, or what is meant by "plants" in either amendment.

It seems clear, however, that by changing the determining factor from weight to number of "plants *regardless of weight*," Congress intended to punish growers of marihuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marihuana plants to be as culpable as one who has successfully grown 100 kilograms of marihuana. The court in *United States v. Graham*, 710 F.Supp. 1290 (N.D.Cal.1989), reached a similar conclusion in rejecting a defendant's

argument that, because of their small size, the weight of the indoor marihuana plants he was growing should be used in computing his sentence rather than the number of plants.

Weight is irrelevant, because the actual amount of usable marijuana had the plant been allowed to fully grow is unknown. The following example is illustrative of why this distinction in measures makes sense. If one is growing 500 newly planted marijuana plants, and is arrested, the plants' weight would be minimal. If, however, that same person is arrested months later when the plants are fully grown, the weight would be much greater. If defendants' argument were adopted, and weight were used as the measure, the Guidelines would reward a defendant for being arrested early in the growing cycle before his plants have matured. An interpretation of the Guidelines resulting in this situation would not be proper.

710 F.Supp. at 1291.[2]

Defendant's argument in this case, that the small flora growing in his basement were mere "cuttings" and not "plants," must similarly be rejected. These floral entities were separate from each other, had leaves, had roots and were planted by defendant with the intent of producing full size marihuana plants for harvesting. Defendant may not benefit from the happen-stance that he was arrested at a point when many of the plants were immature.

The court is not persuaded by defendant's distinction between plants and cuttings. Section 841(b) is not concerned with the niceties of the various stages of plant growth. There is no distinction made in the statute between seedlings, cuttings, small plants, medium plants, large plants, mother plants, plants with secondary root and leaf systems, etc. These groupings are all subcategories of plants—plants at various stages of growth, but plants nonetheless. There is no indication that Congress intended "plants" to have any meaning other than its ordinary one which includes cuttings and small plants.

Section 841(b) concerns the relevant punishment for various quantities of marihuana. One of the ways given for measuring quantity is by number of "plants." It is undisputed that defendant's "cuttings" are marihuana. It is also clear that these individual cuttings, planted with the intent of growing full size plants, and which had grown roots, are "plants" both within common parlance and within Section 841(b).[3]

The court finds that defendant manufactured 178 marihuana plants and is thus subject to the mandatory five year minimum sentence of 21 U.S.C. § 841(b)(1)(B)(vii).

---

**2.** The court did note that the probation officer had discounted "800 seedings" from the total of 1300 plants, leaving a net of 500 plants. The court did not describe the seedings, but it would appear that those were plants grown from a seed rather than from a cutting as in the present case.

**3.** The court limits its holding to the facts of this case and expresses no opinion on when a seed becomes a "plant."

GOVERNMENT
EXHIBIT

1318

GOVERNMENT
EXHIBIT
2

GOVERNMENT
EXHIBIT
3

GOVERNMENT
EXHIBIT

4

GOVERNMENT
EXHIBIT
5
PENGAD-Bayonne, N. J.

1322

GOVERNMENT
EXHIBIT
6

GOVERNMENT
EXHIBIT
7