**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James T. LABAT, Defendant–Appellant.**

**Nos. 89–3326, 89–3329 and 89–3330.**

United States Court of Appeals, Tenth Circuit.

Sept. 28, 1990.

---

Robin D. Fowler, Asst. U.S. Atty. (Kim I. Martin, Asst. U.S. Atty., and Lee Thompson, U.S. Atty., on the brief), Wichita, Kan., for plaintiff-appellee.

Cyd Gilman, Asst. Federal Public Defender, Wichita, Kan., for defendant-appellant.

Before MOORE, SETH and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

The single issue raised in this case is whether the district court erred in imposing a fine totalling $110,823.95 under U.S.S.G. § 5E1.2(i). Because the district court's decision to impose a fine for the purpose of offsetting the costs of incarceration after refusing to impose a punitive fine is inconsistent with the guidelines, we vacate the fine.

James Labat pled guilty to one count of conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841 and 846. Mr. Labat was sentenced to sixty months' incarceration to run concurrently with sentences imposed in two other cases. Additionally, a term of five years of super- vised release was imposed. In each of the three cases, the defendant was ordered to pay fines totalling $110,823.95. The court levied these fines for the purpose of reimbursing the government for the costs of his incarceration.

The Pre-sentence Report (PSR) addressed Mr. Labat's ability to pay a punitive fine based on his existing personal assets and earning potential. The report disclosed Mr. Labat's two cars were confiscated leaving him with no assets other than personal effects, furniture, and clothing; he did not own the house where he resided but rented it from his sister; he has been unemployed since July 1988; and his family receives public assistance. The report further disclosed, however, Mr. Labat made cash payments totalling $50,000 on a home his mother owns for which she signed a note for the remaining $35,000 balance.[1] Mr. Labat's work history included a year of managing a club, three years of employment as a bodyguard, and sporadic odd jobs at a gas station and grain company. The PSR suggested that Mr. Labat has the earning ability to pay a fine on an installment basis from the lower end of the guideline range, U.S.S.G. § 5E1.2(c)(3), but a fine above that limit would be inappropriate. The PSR concluded that because the court had appointed counsel for Mr. Labat, he should be considered indigent for purposes of imposing the § 5E1.2(i) additional fine.

At the sentencing hearing, the only contested issue was Mr. Labat's ability to pay any fine, but no evidence directed to this issue was presented by either the government or the defendant. Despite the disclosures in the PSR and without making any specific finding of the defendant's ability to pay, the court imposed fines in all three cases. Implicit, however, in the court's refusal to impose a fine under § 5E1.2 is the presumption that the court found the defendant unable to pay the punitive fine.[2]

---

1. During oral argument, we were advised by counsel for both sides the government has commenced forfeiture proceedings against this house.

2. Section 5E1.2(a) states: "Except as provided in subsection (f) below, the court *shall* impose a fine in all cases." (Emphasis added.) Section 5E1.2(f) states the court may waive the fine if it determines the defendant is unable to pay or the fine would "unduly burden the defendant's dependents." Because the court did not impose the fine mandated under § 5E1.2(a), and be-

Upon request of defense counsel, the court clarified that the fines imposed were for incarceration and supervision. In all three cases, the imposition of fines was based upon the court's conclusion they were justified because of "the defendant's financial profile and his future potential earning capabilities." The court was also of the opinion "[t]he fine could be satisfied no later than during the period of supervised release." That statement notwithstanding, Mr. Labat calculates to satisfy the $110,000 fine during his five-year period of supervised release, he must pay $22,164 per year.[3]

Although defense counsel argued Mr. Labat was undereducated, untrained vocationally, unable to retain counsel, and his family would be unduly burdened, the court stated that society should not be burdened with the expense of paying for Mr. Labat's imprisonment. "I think the defendant is the one who is responsible for his acts and responsible for his keep," the court stated.

Recognizing that § 5E1.2(d) requires that the combined sentence reflect the seriousness of the offense, Mr. Labat contends on appeal that the district court overlooked additional factors the Commission provided to determine an appropriate fine. Chief of these factors, he contends, are a defendant's ability to pay and the burden on defendant's dependents. If the defendant establishes both the inability to pay and family hardship, the court may impose a lesser fine or waive the fine entirely provided the total combined sanction remains punitive. § 5E1.2(f).[4] Mr. Labat urges the court not only bypassed this analysis but improperly applied the guidelines.

Defendant contends a fine for the costs of incarceration, defined by § 5E1.2(i) as an "additional" fine, cannot be assessed unless the "regular type of fine" or punitive fine is first levied. Under § 5E1.2(a), "the court *shall* impose a fine in *all* cases" (emphasis added) unless the court waives it upon finding the conditions of § 5E1.2(f) satisfied. Since the district court decided not to impose a fine under § 5E1.2(a), presumably upon application of § 5E1.2(f) to the facts in the PSR, defendant contends the court erred in levying the additional fine for incarceration in the face of the same PSR. In support, Mr. Labat quotes Commentary 7 of § 5E1.2: "Subsection (i) provides for *an additional fine* sufficient to pay the costs of any imprisonment ... subject to the defendant's ability to pay...." (Emphasis added.)

Mr. Labat contends the district court properly applied § 5E1.2(f) in deciding not to impose a punitive fine but failed to apply the same analysis to the so-called additional fine, despite the specific inclusion of subparagraph (f) limitations within § 5E1.2(i). In addition, Mr. Labat contends the district court's imposition of a subparagraph (i) fine is clearly erroneous in light of the record.

Because defendant chose to present no evidence at the sentencing hearing, the only evidence before the court on defendant's financial condition was the PSR, which concluded: "[I]t is the writer's opinion that the defendant should still be considered indigent for the purposes of imposing this additional fine." Notwithstanding his failure to augment the PSR with additional facts—assuming such facts even exist—defendant maintains the court erred in imposing the fine because he is clearly without means to satisfy it. In support, defendant cites *United States v. Seminole*, 882 F.2d 441 (9th Cir.1989), and *United*

cause the only reasons that fine can be waived are those set out in subsection (f), the only logical assumption is that the court found those reasons to exist.

**3.** Since nothing within the record establishes he has any ability to pay this sum, he contends the district court erred in imposing a fine on that ground alone.

**4.** Section 5E1.2(f) states:

If the defendant establishes that (1) he is not able, and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine ..., or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine. In these circumstances, the court shall consider alternative sanctions in lieu of all or a portion of the fine, and must still impose a total combined sanction that is punitive.

*States v. Mitchell,* 893 F.2d 935 (8th Cir. 1990).

In *Seminole,* the district court assessed a $5,000 fine "to repay the taxpayers" for court-appointed counsel's overburdening the court throughout the trial. At sentencing, the parties stipulated that defendant was indigent. The Ninth Circuit held the district court failed to consider the defendant's ability to pay before imposing the fine and vacated and remanded the case for reconsideration. In *Mitchell,* the court ordered the defendant to pay restitution reduced from $45,000 to $22,000 over a three-year period although the Pre-sentence report stated defendant had a total monthly income of $175, and it was unlikely that defendant could make restitution. Recognizing that the district court has broad discretion to fashion a restitutionary order, the Eighth Circuit reversed the order and remanded for a determination of defendant's ability to pay related as well to a realistic timetable.

In response, the government argues the court had sufficient evidence before it to support the fine. The government offers that the PSR can be read more than one way. In that alternative reading, it would be noted that Mr. Labat is a "healthy 29 year old male," graduated from high school, earned twelve hours college credit, and "has the physical and mental capabilities to gain substantial lawful employment after he is released from prison." The government argues defendant's life-style, choosing not to work in the past and preferring to traffic in cocaine, is not a sufficient reason for waiving the fine. The prosecutor adds, in one month Mr. Labat managed to pay $50,000 for his mother's house, half of the fine ordered by the court, and also describes two large cocaine buys in which Mr. Labat managed to procure large amounts of cash to purchase drugs.[5] The government reminds us that Mr. Labat has the burden to show his inability to repay the fine during the five years of supervised release time, but does not address the issue of the burden the fine would place on defendant's family.

The government distinguishes *Seminole* on the ground that the court used the fine to punish defendant for his attorney's conduct, and *Mitchell* because it involved restitution. The government urges the district court's finding was sufficient to support the fine.

The government's arguments, however, do not realistically deal with the facts in the record. First, the record makes clear the defendant is without current assets. Second, the financial benefits he might have derived from trafficking in contraband notwithstanding, there is no evidence that he produced significant income from legitimate pursuits. Finally, there is no indication in the record of his ability to gain employment upon release from custody that would produce income sufficient to allow Mr. Labat to support his dependents and still pay the fines he was assessed.

In this instance, we cannot say the defendant failed to carry the burden of showing ability to pay imposed upon him by § 5E1.2(f) because the PSR effectively satisfied that burden for him. Here, the defendant was entitled to rely and stand upon the facts contained in the PSR which led only to the conclusion the defendant is indigent and without potential prospects for improving that situation. Moreover, the government does not suggest the presence of any contrary evidence. Under the circumstances of this case, we would have to agree with the Eighth Circuit that "it is an incorrect application of the guidelines to impose a fine that a defendant has little chance of paying." *United States v. Walker,* 900 F.2d 1201, 1207 (8th Cir.1990).

Assuming, argumentatively, that the evidence of the defendant's ability to pay is, at best, equivocal, and the district court was not burdened by subparagraph (f), there is an even more fundamental reason the fine is invalid. According to the clear terms of § 5E1.2(i), the fine to reim-

---

5. The government cites Comment 6 which states that the court may consider income or assets the defendant failed to disclose to justify the larger fine, but there is no evidence in this case the defendant has undisclosed assets.

burse the government is an "additional fine." Yet, the government rejects Mr. Labat's argument that before a fine can be imposed for costs of incarceration, the court must impose a punitive fine, contending the only restriction placed on U.S.S.G. § 5E1.2(i) is a defendant's ability to pay.

Mr. Labat's two-step reading of the guidelines, however, makes sense both on grounds of simple logic and a plain reading of the language of this section.[6] Under § 5E1.2, a fine must be imposed unless subparagraph (f) is satisfied. Although (f) is not mandatory, it makes no sense to waive the punitive fine and impose the "*additional*" fine.

Indeed, a fine is a fine,[7] and if a defendant is indigent for purposes of one, he must be indigent for purposes of the other. Moreover, fundamental semantics dictates that a subparagraph (i) fine cannot be "additional," unless it augments another fine. The guideline simply permits no other reading. Unfortunately, the district court seemingly gave no consideration to the language of subparagraph (i) and, as a result, misapplied § 5E1.2 of the guidelines.

The government cites our recent opinion in *United States v. Doyan*, 909 F.2d 412 (10th Cir.1990), in support of its contention that the trial court did not abuse its discretion in levying the cost of incarceration fine. Even though Mr. Doyan was Mr. Labat's codefendant, there are distinctions present in *Doyan* which make the case inapposite. Principal among these distinctions is the evidence of Mr. Doyan's earning capacity. In this context, the *Doyan* court held the trial court did not abuse its discretion by refusing to waive the cost of incarceration fine. That is not the context of this case. Here there is no evidence Mr. Labat was earning a regular income or had the ability to do so upon discharge from incarceration. Moreover, the *Doyan* court did not consider the inconsistency between waiving the punitive fine and levying the cost of incarceration fine. More importantly, the *Doyan* court was not called upon to consider whether a cost of incarceration fine could be imposed without first imposing a punitive fine. For these reasons, *Doyan* is not controlling in this case.

We hold that an "additional fine" under § 5E1.2(i) cannot be imposed unless the court first imposes a punitive fine under § 5E1.2(a). The FINE is VACATED, but in all other respects the judgment is AFFIRMED.

**6.** "Additional" is defined as "existing or coming by way of addition." *Webster's Third International Dictionary*, p. 24 (1981).

**7.** *See* The Sentencing Commission's "Questions Most Frequently Asked About The Sentencing Guidelines," Question # 24:

Is the cost of imprisonment and supervision considered a fine?

Answer: Yes. The guidelines provide that the court shall order a fine within the guideline fine range and the court "shall impose an *additional fine amount* that is at least sufficient to pay the cost to the government of any imprisonment, probation, or supervised release ordered" (emphasis added). Of course, the guideline fine and the costs of imprisonment/supervision fine cannot total more than the maximum fine provided by statute. (*See* § 5E1.2(i).)

We note this publication contains the disclaimer that the information does not "necessarily represent the official position of the Commission, should not be considered definitive, and is not binding upon the Commission, the court or the parties in any case."