**UNITED STATES of America,
Plaintiff–Appellee**

v.

**Arthur Austin EVES,
Defendant–Appellant.**

No. 90–3230.

United States Court of Appeals,
Tenth Circuit.

April 29, 1991.

D. Blair Watson, Asst. U.S. Atty., Wichita, Kan. (Lee Thompson, U.S. Atty., Kim I. Martin, Asst. U.S. Atty., Wichita, Kan., on the briefs), for plaintiff-appellee.

Cyd Gilman, Asst. Federal Public Defender, D. Kan., Wichita, Kan., for defendant-appellant.

Before MOORE, Circuit Judge, ALDISERT * and McWILLIAMS, Circuit Judges.

ALDISERT, Senior Circuit Judge.

In this appeal brought by a defendant convicted and sentenced for possessing 1000 or more marijuana plants with intent to distribute we have to decide what constitutes a marijuana "plant" under the Sentencing Guidelines Act. The number of plants determines the mandatory minimum sentence of imprisonment in a conviction of possession with intent to distribute. If a defendant is found to have had 1,000 or more marijuana plants regardless of weight, then the mandatory minimum term of imprisonment is 10 years. 21 U.S.C. § 841(b)(1)(A)(vii). If a defendant is found to have had 100 or more (but less than 1,000) marijuana plants regardless of weight, then the mandatory minimum term is 5 years. 21 U.S.C. § 841(b)(1)(B)(vii).

The appellant contends the district court erroneously counted certain cuttings as plants in calculating a possession of more than 1000 plants. "Plant" is not defined in the Sentencing Guidelines. We are required here to determine whether to accept the scientific or botanical definition of "plant" proposed by the appellant or the plain and ordinary meaning of the word.

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

The appellant would have us accept the proper definition to be whether the marijuana cutting was "viable" and thus plunge us into the task of applying esoteric botanical tests to determine when plant life actually begins. In this case of statutory construction, we decline the invitation to accept the notion that Congress intended a highly scientific meaning to plant life similar to what gynecologists and obstetricians and ecclesiastics and philosophers have grappled with in the context of other highly publicized litigation. We decline to develop a trimester system or viability instrumentation to determine when a cutting becomes a plant. We conclude that the word "plant" under the Sentencing Guidelines is to be given its plain and ordinary meaning and that the district court did not err in counting cuttings with roots as plants. We therefore affirm the district court on this issue. 739 F.Supp. 1456.

Two subsidiary questions involve our recent decision in *United States v. Labat*, 915 F.2d 603 (10th Cir.1990), holding that a fine of incarceration costs is improper unless a punitive fine is imposed, and a search and seizure issue. The Government confesses error on the *Labat* issue and we therefore vacate the fine of incarceration costs. The search and seizure issue is without merit and we affirm.

Jurisdiction was proper in the trial court based on 21 U.S.C. § 841(a). Jurisdiction on appeal is proper based on 28 U.S.C. § 1291. Appeal was timely filed under Rule 4(b), F.R.A.P.

## I.

On October 26, 1990, Federal Drug Enforcement Administration (DEA) Agents obtained and executed a search warrant at the residence of the defendant, Arthur Austin Eves, in Wichita, Kansas. There the agents discovered a highly sophisticated marijuana growing operation. Eves had eight parent plants from which he took cuttings which were then placed in rock-wall cubes for propagation. There were twelve tables arranged in his basement to hold the marijuana. Each table had a numerical designation. The appellant concedes that tables # 3–9 contained 915 marijuana plants. He contests, however, that the cuttings on the other tables were plants. The chart at the bottom of the page designates the table, the number of cuttings, and the days since they were first cut. Table # 1 was empty.

The appellant argues that the 502 cuttings on Tables # 2, 10, 11 & 12 were not plants and should not have been counted towards the total number of plants.

Agent Robert Benton of the DEA Task Force videotaped the search of the appellant's home. He testified that the cuttings or plants on tables # 10 and # 11 were larger than those on table # 12 and the cuttings or plants on table # 2 were nearly twice the size of the ones on tables # 10 and # 11. The average plant on table # 2 was seven to eight inches tall and Agent Benton believed there were three tiers of

| Table | Number | Days since cutting |
|-------|--------|--------------------|
| 1 | 0 | |
| 2 | 150 | 17–18 |
| 3 | 150 | (conceded plants) |
| 4 | 150 | (conceded plants) |
| 5 | 150 | (conceded plants) |
| 6 | 48 | (conceded plants) |
| 7 | 145 | (conceded plants) |
| 8 | 132 | (conceded plants) |
| 9 | 132 | (conceded plants) |
| 10 | 167 | 10 |
| 11 | 29 | 10 |
| 12 | 156 | 4 |

leaves on each plant, although he admitted on cross-examination that he did not know how the appellant cared for or maintained the plants or what conditions existed on the plants to make them three tiered.

Agent Benton further testified that when the marijuana was pulled out of the cubes on tables 11 and 12, the marijuana "just popped right out." The marijuana cuttings on table # 2 "didn't just pull right out. You had to actually tug them out." Trans., p. 83.

The DEA took 1414 cuttings from the rockwall cubes but only cuttings with root balls on them were counted as plants. Applying the DEA's definition, the appellant's investigator counted between 1100 and 1200 cuttings as plants. R.O.A.Supp. Vol. A, p. 85, lines 2–13.

## II.

Eves relies on his own testimony and that of his expert, Dr. Arthur Youngman, who testified at the sentencing hearing.

### A.

Eves testified that he would take cuttings from the parent plants and stick the cuttings into rockwall cubes that were saturated with water as a means of propagation. For the cuttings to remain viable, the appellant had to spray mist and cover them with a plastic dome in order to keep the humidity high. This type of care and maintenance was not necessary on the tables holding what the appellant conceded were plants. Instead, he only had to keep the 12 gallon reservoir underneath the tables filled with water and nutrients. Water would be pumped automatically to the table surface to water the plants on those tables.

The appellant testified that he did not consider cuttings to be plants until approximately 30 days after they were taken from the parent plant. At that time they would survive even if he did not put a tent on them or did not mist them frequently. If he saw growth on the cuttings by new leaves beginning to form on the tops and a lack of wilting, he considered the cuttings to be plants. The earliest point when he saw this occur was 21 days from the time the cutting was severed from the parent plant, but in general it took 30 days.

### B.

The appellant relies upon the scientific or botanical definition of "plant" proffered by Dr. Youngman, who holds a bachelor and master's degree in biology and a Ph.D in botany. He has been an assistant professor of biology at Wichita State University for 25 years and teaches courses at all levels of botany. He operates the greenhouse at Wichita State, and conducts research on the growth and propagation of plants. He has also grown marijuana experimentally from seed at the university.

Dr. Youngman testified that a "plant" is a living organism belonging to the kingdom of Plantae which is composed of a shoot system and a root system. Because the plant is a living organism, one of its most important characteristics is that it has its own means of obtaining energy. In the case of a plant, obtaining energy involves gas exchange, since one of the gases it uses is carbon dioxide to carry on photosynthesis. Dr. Youngman testified that, in his opinion, a cutting is not a plant. A cutting becomes a plant when it develops a root system sufficient to allow the cutting to maintain open stomas so that it can exchange gas and provide for energy requirements.

Dr. Youngman's opinion was that a lay person cannot tell by looking at a cutting whether it is a cutting or a plant. The fact that some roots might appear on a cutting does not necessarily mean that the cutting has become a plant in Dr. Youngman's opinion. The only way to tell whether a cutting has become a plant is to test whether its root system has developed well enough to allow the stoma to remain open so that gas exchange and energy nourishment occur.

Instrumentation is available to monitor a cutting or plant to see whether gas exchange is occurring. There is an infrared gas analyzer which measures minute concentrations of carbon dioxide in the atmo-

sphere. If the level of carbon dioxide is reduced, that is a good indication that the cutting or plant was in fact conducting energy. Dr. Youngman testified that the other possibility of determining whether growth was occurring is to observe the cutting or plant over a period of time to see whether increments of tissue were apparent.

Dr. Youngman did not observe physically the cuttings or plants in question. He watched the videotape the police made of the search of the appellant's house and examined photographs of table # 2. It was Youngman's opinion after viewing the videotape and listening to the appellant's testimony that the marijuana on table # 2 were cuttings and not plants, since it seemed to him that the cuttings had not reached the stage of growth where they could nourish themselves.

### III.

The district court considered the testimony and the evidence and concluded that the appellant's crime involved 1000 or more marijuana plants, subjecting Eves to a mandatory ten year sentence pursuant to 21 U.S.C. § 841(b)(1)(A). The court agreed with the reasoning in *United States v. Fitol*, 733 F.Supp. 1312 (D.Minn.1990), that Congress intended "plant" to have its ordinary, everyday meaning, which includes cuttings with roots.

 Whether the appellant possessed with intent to distribute 1000 or more marijuana plants is a question of fact subject to review under the clearly erroneous standard. Rule 52(a), F.R.Civ.P.; *see Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Defining the word "plant" for purposes of the Sentencing Guidelines is a question of statutory construction subject to *de novo* review. *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir.1991). We begin with the assumption that the ordinary meaning of the statutory language accurately expresses the legislative purpose. *In re Hart*, 923 F.2d 1410, 1415 (10th Cir.1991) (per curiam) (citations omitted).

In determining that cuttings with roots should be considered plants, the district court relied upon Judge Devitt's comprehensive opinion in *United States v. Fitol*, 733 F.Supp. 1312 (D.Minn.1990). In *Fitol*, the court thoroughly reviewed the legislative history of the Sentencing Guidelines and concluded that

by changing the determining factor from weight to number of "plants regardless of weight" Congress intended to punish growers of marijuana by the scale or potential of their operation and not just by the weight of the plants seized at a given moment. Congress must have found a defendant who is growing 100 newly planted marijuana plants to be just as culpable as one who has successfully grown 100 kilograms of marijuana.

733 F.Supp. at 1315.

Judge Devitt found nothing in the legislative history of the 1986 or 1988 amendments as to what Congress meant by "plant." However, he concluded that Congress intended "plant" to have no meaning other than its ordinary meaning. *Id.* at 1316.

The common everyday meaning of "plant" is a living organism which belongs to the vegetable kingdom in the broad sense. *cf. Webster's New International Dictionary*, 1881, def. no. 3 (2d ed. unabridged 1961). Often, plants have leaves and roots and grow in soil or other matter. To distinguish the plants from one plant cut into two pieces, there must be evidence of individual growth after the severance, such as growing of roots, from a cutting. According to Webster's "plant" means a young tree, a shrub, or herb, planted or ready to plant; a slip, *cutting*, or sapling ...

*Id.* at 1315.

Two of our sister courts of appeals recently have considered similar issues. *See United States v. Malbrough*, 922 F.2d 458 (8th Cir.1990) (accepting expert testimony that a cutting is not a plant until it develops roots); *United States v. Corley*, 909 F.2d 359 (9th Cir.1990) (only cuttings with sufficient roots to survive are plants);

*United States v. Carlisle,* 907 F.2d 94 (9th Cir.1990) (same).

## IV.

Appellant has not suggested to us, nor has our independent research disclosed, any aspect of legislative history that supports his theory that Congress intended "plant" to be construed other than by its plain and ordinary dictionary meaning. Nor is there any reason to conclude that such an interpretation was intended. This is a statute we are construing; we are examining a congressionally declared code of conduct with clearly defined penalties. We do not even begin to believe that Congress intended an abstruse interpretation that would require police officers to possess infrared gas analyzers to determine whether gas exchange is occurring in marijuana growth or to undergo botanical training in order to observe marijuana, in Dr. Youngman's formula, over a period of time to see whether increments of new tissue appear. As Judge Devitt noted in *Fitol,* the legislative purpose was to remedy the problems associated with determining the weight of marijuana—specifically, whether seeds and stems should be weighed in the mix—and to supplant this test with a more simple method; a method providing that the number of "plants regardless of weight" would trigger the mandatory minimum sentence. 733 F.Supp. at 1315. We perceive that the congressional intent was to simplify, not to complicate, the method of determining the high end or low end mandatory sentences. To accept the appellant's formulation would be to turn our face on the legislative purpose.

■ We agree that the definition intended by Congress is the one accepted by the district court here: a marijuana "plant" includes those cuttings accompanied by root balls. Whether the plant could survive on its own would not be an issue; if it looks like a "plant"—that is, if it has a reasonable root system—it will be considered a "plant." No expert need testify, no experiments with instrumentation to monitor whether gaseous exchange is occurring need be conducted, no elaborate

trimester or viability system need be established. If a cutting has a root ball attached it will be considered a plant.

In this manner we will respect the precept that in the absence of legislative intent to the contrary, the plain and ordinary meaning of the statute controls. *In re Hart,* 923 F.2d 1410, 1415 (10th Cir.1991) (per curiam). That is what the court did in *Fitol* and what the district court did here. We therefore affirm the district court's determination of the number of plants used in sentencing the appellant.

## V.

■ The district court imposed a fine for the costs of incarceration and supervised release in the amount of $150,705.70. Subsequently, we determined in *United States v. Labat,* 915 F.2d 603 (10th Cir.1990), that a fine for the costs of incarceration is inappropriate in the absence of a punitive fine. The issues involved in that case with respect to the issue of the fine are identical in the case before us. The Government concedes this issue. We therefore vacate the fine in accordance with our decision in *Labat.*

## VI.

The appellant also moved to suppress the evidence found in his home, arguing that the warrant lacked probable cause and that there was such an "appalling lack" of evidence in the affidavit that the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) should not apply. The district court dismissed both arguments and held that there were sufficient facts contained in the affidavit in support of the search warrant to establish probable cause. The court further found that the *Leon* exception was inapplicable.

The standard of review on an appeal of the denial of a motion to suppress evidence is that the reviewing court must accept the trial court's findings of fact unless clearly erroneous and must consider the evidence in the light most favorable to the Govern-

ment. *United States v. Soto–Ornelas*, 863 F.2d 1487 (10th Cir.1988).

We agree with the district court's determination that "Agent Conway's affidavit provides a substantial basis for finding probable cause that certain paraphernalia and contraband used in the indoor growing of marijuana such as records, ledgers, literature, and documents concerning the manufacture and cultivation of marijuana would be found at the premises [of the defendant]." R.O.A. Vol. III, p. 20, line 10. To the extent that the district court's determination was based on findings of fact, we do not find them clearly erroneous. To the extent that they were based on conclusions of law, our review reveals no legal error. We therefore affirm the district court's decision to admit the evidence.

## VII.

We have considered all of the contentions of the appellant. We agree that our decision in *United States v. Labat* precludes the imposition of a fine for the costs of incarceration in the absence of a punitive fine and VACATE that fine. We AFFIRM the judgment of the district court in all other respects.