**UNITED STATES of America, Appellee,**

v.

**Robert Dean BECHTOL, Appellant.**

**No. 90–2799.**

United States Court of Appeals, Eighth Circuit.

Submitted May 14, 1991.

Decided July 24, 1991.

William G. Brewer, Des Moines, Iowa, for appellant.

Lester Paff, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Robert Dean Bechtol challenges a sentence imposed by the district court[1] following his plea of guilty to manufacturing marijuana in violation of 21 U.S.C. § 841(a). For reversal Bechtol argues that the district court erred in including marijuana cuttings in calculating his base offense level under the Sentencing Guidelines § 2D1.1(c). We affirm.

On June 14, 1990 deputy sheriff Steven Wendt, who had heard rumors that Bechtol was growing marijuana, asked Bechtol if he could search his barn. Bechtol consented. On entering the barn Wendt observed numerous marijuana plants in various stages of growth. In addition to large and medium-sized plants, Wendt saw rows of two to three inch-high cuttings being grown in plastic cups filled with potting soil on shelves under fluorescent lights.

1. The Honorable Charles Wolle, United States District Judge for the Southern District of Iowa.

Wendt then escorted Bechtol to the patrol car. At first Bechtol discussed the growing operation, but when Wendt received a call over the police radio Bechtol ran from the car to the barn. Wendt followed and saw Bechtol attempting to destroy the cuttings and the equipment. Bechtol managed to knock many of the cuttings from the shelves and out of the cups. Wendt picked up some of the cuttings that were lying on the floor and observed "root hairs," which he described as one-quarter inch fine projections coming from the stem. Wendt testified that Bechtol stated that the cuttings, which had been taken from the larger plants, were three or four days old. Inventory of the plants in the barn and of additional plants discovered in the basement revealed forty-three mature plants and 188 cuttings, which included the cups that Bechtol had knocked from the shelves.

At the sentencing hearing Sandra Stoltenow, a government drug identification expert, opined that a cutting that had root hairs was a plant. Drug Enforcement Agent Kenneth Franson, who observed the plants on June 16, testified that the cuttings looked like healthy marijuana plants, but that he had not inspected the roots.

Bechtol testified that he had made the cuttings the night before the search and that none of them had roots. He believed that one-half to three-quarters of the cuttings would have died, even with proper care. Bechtol also presented the testimony of Dr. Richard Pohl, a taxonomic botanist.[2] Dr. Pohl also opined that for a cutting to be a plant it had to have a root system. Dr. Pohl stated the hair-like projections were the beginnings of a root system, and that a cutting with the projections was a plant, but not a viable one. Dr. Pohl doubted whether a cutting could develop root hairs in three days and testified that when he inspected the plants on June 29 sixteen of the cuttings were growing and rooted.

Sentencing Guidelines § 2D1.1(c) provides that if an offense involves fifty or more marijuana plants each plant is treated as equivalent to one kilogram of marijuana. At sentencing the government argued that the cuttings were plants and therefore the

offense level should be based on 231 plants. Bechtol argued that the offense level should be based on the forty-three mature plants. The district court found that Bechtol had manufactured sixty-one plants, forty-three mature plants and eighteen cuttings and imposed a forty-two month sentence. The court explained that it believed that as of June 14, the day of the search, eighteen of the cuttings had become "plants" within the meaning of the guidelines. The court stated that it discredited Bechtol's testimony that he had made the cuttings the night before the search and that it based its calculation on Bechtol's testimony that only a quarter of the cuttings would have matured, and Dr. Pohl's testimony that sixteen of the cuttings had roots by June 29. The court told Bechtol it was a "good thing" he had been arrested in the early stages of the growing, because he would have had a much higher sentence if he had been arrested when the cuttings had matured.

On appeal Bechtol renews his argument that Guidelines § 2D1.1(c) only contemplates mature, viable plants and that there was no reliable evidence supporting the district court's determination that as of the day of the arrest eighteen of the cuttings had matured into plants. The government responds that the viability is irrelevant under the guidelines and the sentence should be affirmed on the ground the cuttings were plants because they had roots, albeit rudimentary roots.

Initially we note that in *United States v. Malbrough*, 922 F.2d 458, 461, 464–65 (8th Cir.1990), *pet. for cert. filed,* —— U.S. ——, 111 S.Ct. 2907, 115 L.Ed.2d 1071 (1991), this court accepted expert testimony that a marijuana cutting was not a plant until it developed a root system and rejected the government's cross-appeal, noting that the government had included tomato and marijuana cuttings in its calculation. The court, however, did not address the issue raised in this appeal of whether a cutting which has developed root hairs is a plant under the guidelines. We now hold that such a cutting is a plant.

**2.** A taxonomic botanist is a botanist who specializes in the classification of plants.

In *United States v. Eves,* 932 F.2d 856 (10th Cir.1991), the Tenth Circuit held that a cutting with a root ball was a marijuana plant under 21 U.S.C. § 841(b),[3] which provides a five-year mandatory sentence if a defendant has manufactured 100 or more marijuana plants and a ten-year sentence for manufacturing 1,000 or more plants. The court rejected an argument similar to the one Bechtol makes in this appeal. The court "declin[ed] to develop a trimester or viability instrumentation to determine when a cutting becomes a plant." At 857. The court relied on Judge Devitt's "comprehensive opinion" in *United States v. Fitol,* 733 F.Supp. 1312 (D.Minn.1990), in concluding that "Congress intended 'plant' to have no meaning other than its ordinary meaning." At 859. Quoting from *Fitol,* 733 F.Supp. at 1316, the court stated " '[t]he common everyday meaning of "plant" is a living organism which belongs to the vegetable kingdom in the broad sense.... To distinguish the plants from one plant cut into two pieces, there must be evidence of individual growth after the severance, such as growing of roots from a cutting....' " At 859–60. Such is the case here.

The Ninth Circuit has also rejected a viability argument. In *United States v. Carlisle,* 907 F.2d 94, 96 (9th Cir.1990) (per curiam), the court held that a district court did not err in including marijuana cuttings in calculating the base offense level under the guidelines. The court noted that although some of the cuttings were small, the guidelines did not distinguish between "cuttings and mature plants." *Id.* The court held that the cuttings were plants under the guidelines because "each individual cutting was in its own propagating unit. Each had varying degrees of root formation. Each had the possibility of surviving outside of its propagating unit." *Id.* The court indicated that "a defendant should not benefit by being arrested in the early stages of plant growth." *Id.,* citing *United States v. Graham,* 710 F.Supp. 1290, 1291 (N.D.Cal.1989), *aff'd, United*

States v. Corley, 909 F.2d 359, 361 (9th Cir.1990) (neither dictionary definition "nor any offered by [appellant] would limit 'plants' to mature and healthy organisms").

For the same reasons, we hold that the district court did not err in including cuttings in calculating the base offense level. Accordingly, the sentence is affirmed.[4]

---

**3.** In *Eves,* the court noted that "[d]efining the word 'plant' for purposes of the Sentencing Guidelines is a question of statutory construction subject to *de novo* review." At 859.

**4.** Because the government did not cross-appeal, we do not vacate the sentence but only affirm the sentence of forty-two months. *Cf. United States v. Malbrough,* 922 F.2d at 464.