No. 112,846

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN HOLSTED,
*Appellant.*

SYLLABUS BY THE COURT

1.

Kansas law makes it a crime to cultivate marijuana. Cultivate means the planting or promotion of growth of five or more plants which contain or can produce controlled substances. K.S.A. 2015 Supp. 21-5701(c).

2.

We adopt a test to determine if a plant cutting is a plant. Does the cutting have some visible root formation? If it does, it is a plant. If it does not, it is a cutting and cannot be the basis for a charge of cultivation of marijuana.

Appeal from Wyandotte District Court; J. DEXTER BURDETTE, judge. Opinion filed April 8, 2016. Reversed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Ian D. Tomasic*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and POWELL, JJ.

1

HILL, J.:  There is a difference between what might be and what is. In this appeal, we must decide whether marijuana clippings are plants as the term is used in Kansas' statute defining the crime of cultivation of marijuana. Because the clippings here had no roots, we hold the 29 cuttings found by the police were not plants and, therefore, the State failed to prove Steven Holsted was cultivating 5 or more marijuana plants as required by law.

*The parties agreed to the facts.*

The State charged Holsted with cultivation of marijuana, possession of drug paraphernalia, and possession of marijuana. After the court denied his motion to suppress the evidence based on his allegations of coerced consent to search, Holsted pled guilty to all counts but later withdrew his plea to the cultivation of marijuana charge. The court took up the matter on stipulated facts. We summarize the parties' stipulations:

The Narcotics Unit of the Kansas City, Kansas, Police Department received an anonymous tip advising that there was a strong odor of marijuana coming from a house on 39th Street in Kansas City, Wyandotte County, Kansas. The anonymous tip also described the color of the house and stated that it had a chain link fence.

On March 1, 2013, Kansas City, Kansas, police officers responded to the area and discovered the description of the house actually matched the house next door. Officers knocked on the front door of the house and showed police identification and badges to Holsted. The officers told Holsted that there was a drug complaint regarding his residence. Holsted invited officers inside the residence. Once they were inside, the officers noticed a strong odor of raw marijuana. Holsted admitted to having 2.1 grams of marijuana for personal use, which officers found on the stove in the kitchen.

2

The officers asked Holsted for permission to search the residence. After that, Holsted signed a consent to search form. Holsted was not under arrest at this time, and he walked around freely and cared for his 3-year-old son.

In the attic of the residence, officers found an apparent marijuana-growing operation. The police found:

- 29 small marijuana plants (marijuana cuttings) with no visible roots in an aeroponic/hydroponic growing system;
- one large marijuana plant with a complete root system;
- one white horticultural 100-watt lighting ballast;
- one four-bulb grow light; and
- one white Sun Leaves grow light.

Additionally, the officers found the 2.1 grams of marijuana in a box on the kitchen stove that Holsted had told them about.

The parties agreed that a marijuana cutting will grow roots in approximately 1 to 3 weeks if kept properly in an aeroponic/hydroponic grow system. Because the 29 smaller marijuana cuttings or clippings came from the larger mother plant, the small marijuana cuttings or clippings would become almost a perfect clone of the mother plant.

In making its ruling, the district court spoke of intent and expectations but not about the cuttings themselves:

"I suppose if the defendant had snipped these pieces of marijuana from the healthy mother plant and tossed them aside, we wouldn't be here. . . . There's no question the defendant intended and was in the process of cultivating the clippings, the cuttings, from the main plant so that they would propagate and grow stronger:  The lights, the

3

water . . . . When you take a clipping from a mature healthy plant and you put it in an environment to propagate and cultivate, then that is indeed a plant, smaller plant, but you have the same expectations."

Thus, the issue is framed. Are 29 marijuana clippings with no roots sitting in a growing medium marijuana plants as contemplated in our cultivation of marijuana law?

We turn first to the charging statute. "Cultivate" means "the planting or promotion of growth of five or more plants which contain or can produce controlled substances." K.S.A. 2015 Supp. 21-5701(c). The term "plants" is not defined. The parties take opposing positions on the issue.

Holsted contends that cuttings or clippings taken from a mother plant are not plants until there is visible root formation. The State contends that clippings or cuttings constitute plants at least when they have been transplanted into an aeroponic/hydroponic grow system, as here.

The State contends that this court should look only to the dictionary definition of "plant" cited in the stipulated facts. The parties stipulated:

> "A dictionary definition of 'plant' includes: 'a cutting, seedling, or similar structure, especially when ready for transplantation' or 'a young tree, shrub, vegetable, or flower newly planted, or intended for planting; a set, a cutting, a seedling.' A dictionary definition of 'cutting' includes: 'a piece, as a root, stem, or leaf, cut from a plant and used for propagation.'"

However, our review is de novo when we must decide a question of law. See *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014). The Cambridge English Dictionary defines "plant" as "a living thing that usually produces seeds and typically has a stem, leaves, roots, and sometimes flowers." (Online ed. 2015). Merriam-Webster defines "plant" as "a

4

living thing that grows in the ground, usually has leaves or flowers, and needs sun and water to survive." (Online ed. 2015). A plant includes "a young tree, vine, shrub, or herb planted or suitable for planting." Merriam-Webster (Online ed. 2015). The Oxford English dictionary defines "plant" as "[a] living organism of the kind exemplified by trees, shrubs, herbs, grasses, ferns, and mosses, typically growing in a permanent site, absorbing water and inorganic substances through its roots, and synthesizing nutrients in its leaves by photosynthesis using the green pigment chlorophyll." (Online ed. 2015). These definitions contemplate that a plant is marked by leaves and roots, growth, and the taking in of sun and water.

The clippings found by the police here were just that—clippings. They may have been on the way to becoming plants, but with no roots they could not sustain life by absorbing water and inorganic substances through their roots. The test thus becomes manifest. Does the cutting have some visible root formation? There is a utility to this test. If the clippings have roots, they are plants. If they have no roots, they are not plants and cannot be the basis for a criminal charge of cultivating marijuana under the statute as it is now written.

After all, the statute speaks to what *is* five or more plants, not what the accused *intends* to grow. We have no doubt that Holsted went to all of this trouble of clipping portions of the mother plant and putting them into the growing medium in the hope that they would develop roots. But Holsted's intent does not make a useful definition of what a plant is.

We have found no Kansas cases on the subject. But at least seven federal circuit courts have defined "plant" in the context of the federal sentencing guidelines. Under the guidelines, the number of plants determines the mandatory minimum sentence for the manufacture, distribution, or possession with intent to manufacture or distribute

marijuana when the marijuana is seized in plant form. See 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii), (B)(vii) (2012).

The federal circuit courts have uniformly held that a marijuana cutting is not a plant until there is "'some readily observable evidence of root formation.'" *United States v. Foree*, 43 F.3d 1572, 1574, 1581 (11th Cir. 1995) (marijuana plants have three characteristics: roots, stems, and leaves); *United States v. Delaporte*, 42 F.3d 1118, 1120-21 (7th Cir. 1994) (a cutting that has sprouted roots, even if only rudimentary ones, is a plant); *United States v. Robinson*, 35 F.3d 442, 446 (9th Cir. 1994) ("Until a cutting develops roots of its own, it is not a plant itself but a mere piece of some other plant."); *United States v. Burke*, 999 F.2d 596, 600-01 (1st Cir. 1993) (a plant exists "at the first sign of roots"); *United States v. Edge*, 989 F.2d 871, 877-79 (6th Cir. 1993) (a cutting with callus tissue that formed after the cutting was taken from a mature plant, without more, is not a plant); *United States v. Bechtol*, 939 F.2d 603, 604-05 (8th Cir. 1991) (a cutting that has developed root hairs is a plant); *United States v. Eves*, 932 F.2d 856, 859-60 (10th Cir.) (a cutting that has developed a root ball is a plant), *cert. denied* 502 U.S. 884 (1991). Later, the federal Sentencing Commission adopted that definition. U.S.S.G. § 2D1.1, cmt. 2 (2015); see *United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir. 1996).

Additionally, two state appellate courts have adopted the root requirement in the context of their state's marijuana laws. The Idaho Court of Appeals said it best. "In common parlance, one plant does not immediately become many plants as soon as it is cut into pieces, even if those pieces have been placed in soil or a growing medium." *State v. Schumacher*, 136 Idaho 509, 519-20, 37 P.3d 6 (Ct. App. 2001), *rev. denied* December 19, 2001; see *Com. v. Burnsworth*, 543 Pa. 18, 25-27, 669 A.2d 883 (1995). The State cited no cases that have defined the term "plant" differently.

The State contends that Holsted's reliance on the 10th Circuit's holding in *Eves* is misplaced because while the court held that root formation is an indication that a cutting

is a plant, it did not hold that root formation is necessary for a cutting to be a plant. To the contrary, in *Eves*, the 10th Circuit was clear that "plant" meant there was some visible root formation, rejecting a more involved scientific inquiry. 932 F.2d at 858, 860. The 10th Circuit affirmed the district court's definition:

"[A] marijuana 'plant' includes those cuttings accompanied by root balls. Whether the plant could survive on its own would not be an issue; if it looks like a 'plant'—that is, if it has a reasonable root system—it will be considered a 'plant.' No expert need testify, no experiments with instrumentation to monitor whether gaseous exchange is occurring need be conducted, no elaborate trimester or viability system need be established. If a cutting has a root ball attached it will be considered a plant." 932 F.2d at 860.

Additionally, other circuits have squarely held that a cutting without some visible root formation is not a plant. *Foree*, 43 F.3d at 1574, 1581; *Delaporte*, 42 F.3d at 1120-21; *Robinson*, 35 F.3d at 446; *Edge*, 989 F.2d at 877-79. A root must be "readily apparent to the unaided layperson's eye." *Robinson*, 35 F.3d at 446. This root test is a "clear, easily[]implemented standard rather than one requiring extensive litigation and expert botanical testimony." *Robinson*, 35 F.3d at 446.

Even though there is a definition of "domestic marijuana plant," found in the Tax Code, K.S.A. 2015 Supp. 79-5201, it is not helpful here as it is a tautology—that is, a plant is a plant. It provides that "'domestic marijuana plant' means any cannabis plant at any level of growth which is harvested or tended, manicured, irrigated, fertilized or where there is other evidence that it has been treated in any other way in an effort to enhance growth." K.S.A. 2015 Supp. 79-5201(d).

The term "plant" itself is not defined; rather "plant" is used in the definition. From the definition, we can discern only that a "plant" is something that grows, which is consistent with our interpretation of what the term "plant" means in this case. The 10th Circuit reasoned that "[t]o distinguish [two] plants from one plant cut into two pieces,

7

there must be evidence of individual growth after the severance, such as growing of roots, from a cutting." *Eves*, 932 F.2d at 859 (citing *United States v. Fitol*, 733 F. Supp. 1312, 1315 [D. Minn. 1990]). A cutting or clipping without roots is not a plant because there is no evidence of individual growth on its own. Once a cutting/clipping has become a plant, *i.e.*, developed roots, then we count it. It does not make a difference whether the plant has newly formed roots or is a fully grown "mother" plant—in other words, it counts at "any level of growth."

The State does not offer any compelling reason to rule in a fashion that differs from the federal courts. Holsted did not possess 29 individual marijuana plants—he possessed 29 freshly cut pieces of his mother plant.

The State contends that the "clear legislative intent is to punish the cultivation of marijuana, and there is no question in this case that the defendant intended for these cuttings to be cultivated and intended and expected these cuttings to become almost exact replicas of the mother plant from which they came." We have no doubt that Holsted's clippings were not only cut from the mother plant but had already been transplanted into an aeroponic/hydroponic grow system such that he was certainly promoting the growth of the clippings into distinct plants.

Indeed, the parties stipulated that *the clippings would grow* roots in approximately 1 to 3 weeks' time if kept properly. We note the future tense of that statement. The clippings here did not yet constitute plants when they were seized by the police.

And, even though Holsted had placed his clippings into a growing medium, that fact does not make his case unlike other cases. For example, in *Edge*, marijuana cuttings were found in a growing medium, saturated with a rooting hormone. Some of the cuttings had developed callus tissue, which is formed after a cutting is clipped from a mature plant and is the marker of the beginning of the development of a root. It is from this callus

tissue that roots will come. But, the cuttings did not yet have any visible roots or root hairs. The court adopted the commonly accepted root test and held that those cuttings were not plants. 989 F.2d at 879.

The legislature set the minimum plant requirement at five. See K.S.A. 2015 Supp. 21-5701(c), K.S.A. 2015 Supp. 21-5705(c), (d)(7)(A). If defendants have only cultivated four plants, they can be punished for the possession of the plants under K.S.A. 2015 Supp. 21-5706, but they would not have a sufficiently large enough operation for a cultivation charge. The legislature emphasized the importance of properly counting the plants; the number of plants determines the severity of the crime. See K.S.A. 2015 Supp. 21-5705(d)(7).

By not defining the term "plants," it is presumed that the common, widely used definition was contemplated. See *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). There is a consensus among other courts that the common meaning of "plant" contemplates observable root formation. See, *e.g.*, *Eves*, 932 F.2d at 857-60. We share their view.

Here, the parties stipulated that Holsted's clippings had no root formation. Therefore, there was insufficient evidence that Holsted cultivated five marijuana plants in violation of K.S.A. 2012 Supp. 21-5705(c).

Reversed.