UNITED STATES of America

v.

Tharon Douglas GODWIN and
Arlene Elizabeth Godwin.

No. 91–03018–RV.

United States District Court,
N.D. Florida,
Pensacola Division.

Nov. 26, 1991.

Randall J. Hensel, Asst. U.S. Atty., Pensacola, Fla., for U.S.

Barry W. Beroset, Pensacola, Fla., for defendant Arlene Godwin.

F.T. Ratchford, Pensacola, Fla., for defendant Tharon Godwin.

## ORDER

VINSON, District Judge.

The issue in this case is whether there is a constitutional "rational basis" for treating 1,000 marijuana plants as equivalent to 1,000 kilograms of marijuana for statutory and sentencing guideline purposes. *See United States v. Carolene Products Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938); *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). On May 17, 1991, after a jury trial, the defendants in this case were found guilty of marijuana offenses. Sentencing was originally held on July 23, 1991, but was continued in order to allow the defendants to further develop evidence regarding the production of marijuana plants and the yield of useable and marketable marijuana. An evidentiary sentencing hearing was held on October 31, 1991, and additional evidence was presented. Testifying were Donald Robert Walker, Senior Crime Lab Analyst at the Florida Department of Law Enforcement Laboratory in Pensacola, and Dr. Mahmoud A. ElSohly, currently the Project Director of the National Institute on Drug Abuse Marijuana Project at the University of Mississippi. For the reasons stated herein, the defendant's constitutional challenge to portions of Title 21, *United States Code,* Section 841(b)(1), and Section 2D1.1 of the United States Sentencing Commission Guidelines is DENIED.

## I. Discussion.

The defendants, Tharon Douglas Godwin and Arlene Elizabeth Godwin, were charged by a three-count indictment with: (1) conspiracy to knowingly and intentionally manufacture 1,000 or more marijuana plants and to possess with intent to distribute a controlled substance in violation of Title 21, *United States Code,* Sections 841(a)(1) and 846; (2) knowingly and intentionally manufacturing 1,000 or more marijuana plants and possessing with intent to distribute a controlled substance in violation of Title 21, *United States Code,* Section 841(a)(1); and (3) knowingly and intentionally carrying or using firearms during and in relation to a drug trafficking case, for which they could be prosecuted in a court of the United States, in violation of Title 18, *United States Code,* Section 924(c)(1). After a seven day jury trial in this court, the defendants were found guilty on all counts. Sentencing was initially scheduled for, and held on, July 23, 1991. On that date, this Court brought to counsel's attention the *Osburn* and *Lee* cases, discussed *infra,* and the defendants raised the constitutional objections which are addressed herein. Sentencing was continued until October 31, 1991, in order to allow the defendants an opportunity to develop and present evidence on the issue, and the parties were also given the opportunity to submit written legal memoranda.

At the time of the defendants' arrests, law enforcement officers from the Santa Rosa County, Florida, Sheriff's Department seized 10,451 marijuana plants, all in seed trays and in the early stages of growth in four separate seedbeds. The plants ranged in size from about two inches to about five or six inches in height.

Law enforcement officers also seized a large number of black plastic trays. Evidence presented at trial indicated that these trays were consistent with those used as seedbeds for marijuana seeds prior to

transplanting them as seedlings in other areas. The evidence indicated that the defendants had about 1700 pounds of Miracle Grow fertilizer, tillers, camouflaged screening, P.V.C. pipe, insecticides, etc., indicating a relatively large and sophisticated marijuana growing operation. Law enforcement officers also discovered approximately 3 kilograms of various varieties of marijuana seeds, and approximately 4 kilograms of marketable marijuana, much in ounce-quantity bags. The marijuana varieties included those known in the trade as "Blue Hawaiian," "Afgan," "Skunk," "Redbud," and "Black Colombian." At the time of sentencing, the Presentence Report indicated that the total quantity of marijuana utilized for offense level purposes under the guidelines was 10,457.8 kilograms, based upon 10,451 plants at 1 kilogram per plant and the additional 6.8 kilograms of marijuana found. Offenses involving between 10,000 and 30,000 kilograms of marijuana have a base offense level of 36.

■■ It is well established that Acts of Congress are reviewed by the courts on a standard of whether the legislative judgment had a "rational basis" and was not arbitrary or discriminatory. *See Carolene Products Co.* and *Nebbia, supra.* The guidelines promulgated by the United States Sentencing Commission are also subject to the same standard of review. "The authority to define and fix the punishment for felony convictions is purely a matter of legislative prerogative." *United States v. Hatch,* 925 F.2d 362, 363 (10th Cir.1991) (quoting *United States v. Goodface,* 835 F.2d 1233, 1236 (8th Cir.1987)). When a statute does not discriminate on racial grounds or against a suspect class, Congress' judgment will be sustained in the absence of persuasive evidence that Congress had no reasonable basis for drawing the lines it did. *United States v. Solomon,* 848 F.2d 156, 157 (11th Cir.1988); *United States v. Holmes,* 838 F.2d 1175, 1177 (11th Cir.1988). Thus, a court need only find that Congress had a rational basis for the choice of penalties. *Chapman v. United*

*States,* 500 U.S. ——, ——, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524, 538 (1991).

■■ A. *Actual Weight of Contraband Is Irrelevant.* Title 21, *United States Code,* Section 841(b)(1)(A)(vii) requires a ten-year mandatory minimum sentence, with a maximum of life, for offenses involving "1000 kilograms or more of a mixture or substance containing detectible amount of marijuana, or 1000 or more marijuana plants regardless of weight." 21 U.S.C. § 841(b)(1)(A)(vii). The defendants argue that the actual weight of all the 10,451 confiscated plants did not exceed one pound. If only the actual weight of confiscated marijuana is used, the statute provides for a maximum sentence of five years, and no minimum mandatory sentence. *See* 21 U.S.C. § 841(b)(1)(D). Thus, resolution of the issue in this case has a major effect on the defendants' sentencing. However, the plain language of this provision indicates that the applicability of the ten-year mandatory minimum provision to offenses involving marijuana plants is determined by the number of plants, not by their weight.[1] *See United States v. Eves,* 932 F.2d 856, 856 (10th Cir.1991) ("The number of plants determines the mandatory minimum sentence of imprisonment in a conviction for possession with intent to distribute").

Furthermore, the legislative history of Section 841(b)(1)(A)(vii) makes it clear that in enacting a mandatory minimum sentencing provision based solely on the number of plants possessed by the defendant, Congress " 'intended to punish growers of marijuana by the scale of potential of their operation and not just by the weight of the plants seized at a given moment'." *United States v. Eves, supra,* 932 F.2d at 859 (quoting *United States v. Fitol,* 733 F.Supp. 1312, 1315 (D.Minn.1990)). The Senate Judiciary Committee's report regarding the applicable provision of the Anti–Drug Abuse Act of 1988 directly addresses why:

1. This provision is part of a scheme of graduated penalties for those convicted of marijuana cultivation, whose penalties are prescribed based on the number of plants involved, with breakpoints at 50 plants, 100 plants, and 1,000 plants. *See* 21 U.S.C. § 841(b)(1)(A)–(D).

Section 841(b)(1)(A) provides for a mandatory minimum 10 year penalty for distribution, or possession with intent to distribute, of "1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana." Defendants charged with possessing large quantities of marijuana plants have argued that the statutory definition of marijuana plants specifically excludes seeds and stems of the plant, and that therefore these items may not be counted toward the 1,000 kilogram requirement.

The government has argued in response that the term "mixture or substance" encompasses all parts of the plants as harvested, notwithstanding the statutory definition of "marijuana," but defendants contend that the "mixture or substance" language applies only to marijuana after it has been prepared for illegal distribution. The defendants' position has been adopted by at least one court. *United States v. Miller*, 680 F.Supp. 1189 (E.D.Tenn.1988).

*The amendment is intended to curtail this unnecessary debate by providing that the minimum penalty is triggered either by the weight of the "mixture or substance" or by the number of plants regardless of weight. The bill uses 1,000 plants as the equivalent of 1,000 kilograms.*

*Section Analysis of Judiciary Committee Issues in H.R. 5210, 134 Cong. Rec. § 17360, § 17368 (daily ed. Nov. 10, 1988) (comments of Sen. Biden). (emphasis added)*

Therefore, as a preliminary matter, I find that Congress has expressly provided for an enhanced, 10–year minimum sentence for "1,000 or more marijuana plants regardless of weight." The actual weight of the plants is irrelevant under the statute. *United States v. Bradley*, 905 F.2d 359 (11th Cir.1990).

■ B. *Section 841(b)(1)(A)(vii) and Sentencing Guideline 2D1.1 are not Unconstitutional.* The defendants have challenged the constitutionality of both Section 841(b)(1)(A)(vii) and Sentencing Guideline

2D1.1. Section 2D1.1 of the (1991) Sentencing Guidelines provides:

In the case of an offense involving marihuana plants, if the offense involved (A) 50 or more marihuana plants, treat each plant as equivalent to 1 KG of marihuana; (B) fewer than 50 marihuana plants, treat each plant as equivalent to 100 G of marihuana. *Provided,* however, that if the actual weight of the marihuana is greater, use the actual weight of the marihuana.

§ 2D1.1 at 2.47, n. *. (Manual effective 11/1/90)

The defendants argue that there is no rational basis for Congress' selection of one thousand plants as a trigger for the enhanced, ten years to life, sentencing and the application of the mandatory sentencing provisions contained in Title 21, *United States Code*, Section 841(b). According to the defendants, there is also no rational basis for the treatment by the Drug Quantity Table in Section 2D1.1(c) of the Sentencing Commission Guidelines making one marijuana plant the equivalent to one kilogram of marijuana. Therefore, the defendants argue, these portions of both the statute and the sentencing guidelines are arbitrary and unconstitutional in application, and deny the defendants due process and equal protection, contrary to the Fifth and Fourteenth Amendments to the United States Constitution. (See documents 56, 58).

In support of their argument, the defendants rely upon *United States v. Osburn*, 756 F.Supp. 571 (N.D.Ga.1991), in which the court held that Sentencing Guideline 2D1.1 was unconstitutional to the extent that the guidelines equated one marijuana plant with one kilogram of marijuana for plants in groups of 50 or more. The defendants also cite *United States v. Lee*, 762 F.Supp. 306 (D.Kan.1991), which held unconstitutional the application of the minimum mandatory sentencing contained in Section 841(b) on the grounds that the selection of one hundred plants for the 5–year minimum mandatory sentence enhancement purposes (as the equivalent of

100 kilograms) was without a rational basis.

I also note that *United States v. Streeter*, 907 F.2d 781 (8th Cir.1990) held that, prior to being amended, the sentencing guidelines were unconstitutional to the extent that one marijuana plant equated to 100 grams in cases involving less than 50 plants, since the underlying statute required the actual weight of the plants to be used in cases of less than 50 plants.

(1) *Newly Developed Data.* In light of the evidence presented in this case, I must respectfully disagree with the reasoning of the *Lee* and *Osburn* courts. In *Osburn*, the court relied on the testimony of Dr. Mahmoud A. ElSohly, who also testified in this case. In *Osburn*, as in this case, Dr. ElSohly testified regarding a two-year study he had undertaken to determine the average weight of usable marijuana produced by a cannabis plant. His study involved both Mexican and Colombian varieties of long maturity. The plots of marijuana were well fertilized and irrigated. Using the Mexican variety at stages of maturity from 12 to 21 weeks, Dr. ElSohly's plants averaged a usable marijuana yield of 222.37 (.2 kilograms). [See Table 1, attached.] Using only mature plants, the Colombian variety averaged a bit higher, at 273.7 grams of usable marijuana. [See Table 2, attached.] In the *Osburn* hearing, Dr. ElSohly testified that he had never seen or grown a plant which produced as much as one kilogram (or 2.2 pounds) of marketable marijuana, and that, even under ideal conditions, he would not expect any marijuana to yield an average of one kilogram per plant.

Both the *Osburn* and *Lee* decisions were based on the absence of any evidence to indicate that a marijuana plant, even under optimum conditions, can yield one kilogram of dry marijuana leaves. Such is not the case here.

In this case, the defendants also called Dr. ElSohly as an expert witness in the area of marijuana cultivation. However, Dr. ElSohly testified that, after being a witness in the *Osburn* case, he undertook another study to experiment with other growing factors to determine whether a yield of one kilogram per plant was possible. The prior study had been based on 36–inch rows and 36–inch plant spacing, or nine square feet per plant. In these studies, Dr. ElSohly varied the distances between the rows of plants and the spacing of the plants themselves and discovered that increased spacing resulted in increased yield of usable marijuana. [*See* Tables 3 and 4, attached.] Indeed, when the plants harvested by Dr. ElSohly in 1990 had been allocated 81 square feet (planted 9 feet apart, with 9 feet row spacing), they yielded up to 1011 grams. In the 1991 tests, plants having 72 square feet of growing area averaged 1152 grams (2.5 pounds). [See Table 4, attached].

Based on Mr. ElSohly's most recent research and his testimony regarding the results of this research, I conclude that it is quite possible to produce one kilogram of dry usable marijuana from one marijuana plant. Accordingly, there is a rational basis for the use of that equivalency in both the statute and the guideline, and there is no constitutional infirmity.[2]

(2) *Congressional Policy.* Another reason for upholding the statute and sentencing guideline in question does not depend on evidence that one plant's usable product could weigh in excess of one kilogram.

---

**2.** Dr. ElSohly's testimony also addressed the question of when is a seedling a "plant" for purposes of the statute and guideline. Clearly, a sprout that is barely more than a germinated seed can be called a plant, but that hardly seems to be a reasonable construction of what Congress and the Sentencing Commission had in mind. He testified that under ideal transplanting conditions, with each seedling having its separate container, about 10% would not survive. If transplanting from seed trays containing several hundred seedlings ranging in size from about 2 inches to 6 inches in height, the loss rate would probably be considerably greater because of the root separation difficulty, with attendant breakage and bruising of the seedlings. Therefore, I applied a 10% reduction to the 10,451 seedlings to arrive at a net of 9,406 "plants" for sentencing purposes. This, in my judgment, more closely approximates what would actually be the plants with some expectation of growing in a field.

The Supreme Court of the United States has recognized that there is no constitutional requirement that penalties for drug offenses reflect different defendants' "individual degrees of culpability." *Chapman, supra,* 500 U.S. at ——, 111 S.Ct. at 1928, 114 L.Ed.2d at 539. I find that there is a rational basis for the distinction made between those convicted of growing less than 50 plants and those convicted of growing in excess of 50 plants, regardless of whether one plant can produce one kilogram or more of usable product. "Setting punishment on the basis of the number of plants is not arbitrary or irrational. In general, more plants can create more marijuana. Setting a fixed punishment per plant negates the need for complicated hearings to determine the potential yield of a given plant." *United States v. Sousa,* 940 F.2d 670 (9th Cir.1991) (Text available on Westlaw). *See also United States v. Motz,* 936 F.2d 1021, 1025 (9th Cir.1991) ("There is no constitutional requirement that the penalty for an offense involving one marijuana plant be equal to the penalty for an offense involving the quantity of dried marijuana the plant would yield.")

Congress and the Sentencing Commission apparently perceived a greater threat posed by those who produce marijuana on a much larger scale. As noted by the Supreme Court of the United States, "[t]he penalty scheme set out in the Anti–Drug Abuse Act of 1986 is intended to punish severely large-volume drug traffickers at any level." *Chapman v. United States,* 500 U.S. ——, ——, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524, 538 (1991). *See also* H.R.Rep. No. 99–845, Pt. 1 at 12, 17. Thus, the high mandatory minimum sentences for larger scale growers who are caught with over 50, or over 100, or over 1,000 plants reflect Congress' and the Sentencing Commission's view towards the seriousness of the offenses, not a scientific and precise determination that one plant was capable of producing one kilogram of marijuana.

DONE AND ORDERED.

Table 1. Statistics for the Production of Marijuana from Plants of Different Age

| Week | Plant # | WET WEIGHT(g) | | | DRY WEIGHT(g) | | % of dry leaves to Dry WP [1] | % of dry leaves to Wet WP | % of dry stalk/stem to Wet WP | % of Dry plant to Wet WP | % of wet leaves to Wet WP | % of wet stalk/stem to Wet WP | % of dry leaves to Wet leaves | Height (cm) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Whole Plant | Stalk/ Stems | leaves | Stalk/ Stems | leaves | | | | | | | | |
| 12 | 1 | 328 | 182 | 146 | 82 | 53.5 | 39 | 16 | 25 | 41 | 45 | 56 | 37 | 180 |
| 13 | 2 | 1309.7 | 702 | 607.7 | 380 | 130.5 | 26 | 10 | 29 | 39 | 46 | 54 | 21 | 231 |
| 14 | 3 | 1055 | 657 | 398 | 282 | 158.8 | 36 | 15 | 28 | 42 | 38 | 62 | 40 | 269 |
| 15 | 4 | 2163 | 1197 | 966 | 622 | 372.5 | 37 | 17 | 29 | 46 | 45 | 55 | 39 | 286 |
| 16 | 5 | 2222 | 1518 | 704 | 726 | 241.0 | 25 | 11 | 33 | 43 | 32 | 68 | 34 | 224 |
| 17 | 6 | 2268 | 1533 | 735 | 823 | 268.2 | 25 | 12 | 36 | 48 | 32 | 68 | 36 | 281 |
| 18 | 7 | 1972 | 1331 | 641 | 655 | 221.5 | 25 | 11 | 33 | 44 | 33 | 67 | 35 | 300 |
| 19 | 8 | 1724 | 1278 | 446 | 668 | 171.4 | 20 | 10 | 39 | 49 | 26 | 74 | 38 | 325 |
| 20 | 9 | 3472 | 2535 | 937 | 1220 | 388.7 | 24 | 11 | 35 | 46 | 27 | 73 | 41 | 259 |
| 21 | 10 | 2164 | 1661 | 503 | 854 | 217.6 | 20 | 10 | 39 | 50 | 23 | 77 | 43 | 358 |
| Average | | 1867.77 | 1259.4 | 608.37 | 630.9 | 222.37 | 27.7 | 12.3 | 32.6 | 44.8 | 34.7 | 65.4 | 36.3 | 271.6 |

[1] Whole Plant

Table 2. Statistics for the Production of Marijuana from Mature Plants

| Plant # | WET WEIGHT(g) | | | DRY WEIGHT(g) | | % of dry leaves to Dry WP[1] | % of dry leaves to Wet WP | % of dry stalk/stem to Wet WP | % of Dry plant to Wet WP | % of wet leaves to Wet WP | % of wet stalk/stem to Wet WP | % of dry leaves to Wet leaves | Height (cm) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Whole Plant | Stalk/Stems | leaves | Stalk/Stems | leaves | | | | | | | | |
| 1 | 3869 | 2635 | 1261 | 1456 | 709 | 33 | 18 | 37 | 56 | 32 | 68 | 56 | 249 |
| 2 | 2680 | 1620 | 1060 | 688 | 361 | 34 | 14 | 26 | 39 | 40 | 61 | 34 | 231 |
| 3 | 1712 | 1200 | 512 | 620 | 181 | 23 | 11 | 36 | 47 | 30 | 70 | 35 | 213 |
| 4 | 2133 | 1292 | 841 | 680 | 289 | 30 | 14 | 32 | 45 | 39 | 61 | 34 | 216 |
| 5 | 1730 | 1218 | 512 | 570 | 171 | 23 | 10 | 33 | 43 | 30 | 70 | 33 | 221 |
| 6 | 2344 | 1314 | 1030 | 621 | 319 | 34 | 14 | 27 | 40 | 44 | 56 | 31 | 221 |
| 7 | 2283 | 1541 | 742 | 810 | 140 | 15 | 6 | 36 | 43 | 33 | 68 | 19 | 257 |
| 8 | 2231 | 1418 | 813 | 734 | 280 | 28 | 13 | 33 | 46 | 36 | 64 | 34 | 224 |
| 9 | 1168 | 808 | 360 | 400 | 130 | 25 | 11 | 34 | 45 | 31 | 69 | 36 | 224 |
| 10 | 1376 | 965 | 411 | 540 | 157 | 23 | 11 | 39 | 51 | 30 | 70 | 38 | 244 |
| Average | 2155.3 | 1401.1 | 256.2 | 711.9 | 273.7 | 26.8 | 12.2 | 33.3 | 45.5 | 34.5 | 65.7 | 35 | 230 |

1. Whole Plant

Table 3 - 1990

569

GOVERNM EXHIBI

# 1990 RESULTS
## AVERAGE CANNABIS YIELDS

| PLANTING DENSITY | YIELDS | TYPE |
| --- | --- | --- |
| 9 SQ. FT. | 233 GRAMS | COLOMBIAN |
| 18 SQ. FT. | 787 GRAMS | INDICA |
| 81 SQ. FT. | 1011 GRAMS | MEXICO-A |
| 81 SQ. FT. | 842 GRAMS | MEXICO-B |
| 81 SQ. FT. | 457 GRAMS | MEXICO-C |
| --- | --- | --- |
| 9 SQ. FT. | 222 GRAMS * | MEXICAN-MS |
| 9 SQ. FT. | 274 GRAMS * | COLOMBIAN- |

N=46    * UNPUBLISHED UNIV. OF MS STUDY

Table 4 – 1991

# 1991 RESULTS
## AVERAGE CANNABIS YIELDS

| PLANTING DENSITY | YIELD | TYPE/STATE |
|---|---|---|
| 9 SQ. FT. | 227 GRAMS (0.5 LBS) | MEX / ● MS |
| 36 SQ. FT. | 914 GRAMS (2.0 LBS) | MEX / ● MS |
| 72 SQ. FT. | 1152 GRAMS (2.5 LBS) | MEX / ● MS |

N =23   YIELD ADJUSTED FOR SEED WEIGHT & AIR DRY

GOVERNMEN EXHIBIT 3